UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HECTOR BRAVO,

           Plaintiff,

    v.

PATRICIO, *et al.*,

           Defendants.

Case No. 1:25-cv-01065-EPG (PC)

ORDER DIRECTING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE AND REVISE THE DOCKET

FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S EIGHTH AMENDMENT FAILURE TO PROTECT CLAIMS AGAINST DEFENDANTS PATRICIO AND JOHN DOE TOWER OFFICER

(ECF NO. 10)

OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS

Plaintiff Hector Bravo is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 5). In his first amended complaint, he sues sixteen prison officials, mainly alleging that they failed to protect him from being assaulted by fellow inmates at different times and at different prisons. (ECF No. 10).

The amended complaint is now before the Court for screening. Upon review, the Court concludes that Plaintiff's complaint should proceed past screening only on Plaintiff's claim that Defendants Patricio and John Doe Tower Officer failed to protect him from being assaulted by his fellow inmates in violation of the Eighth Amendment.

\\\

1

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis*, the Court may dismiss a claim on these same bases under 28 U.S.C. § 1915(e)(2)(B)(i-iii). (ECF No. 5).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.    INITIAL COMPLAINT AND SCREENING ORDER[1]

Plaintiff filed his initial complaint on August 25, 2025, concerning events that occurred at California Correctional Institution Tehachapi (CCI). (ECF No. 1). He sued CCI Housing

---

[1] For readability, minor alterations, like changing capitalization and correcting misspellings, have been made to some of Plaintiff's quotations without indicating each change. Additionally, Plaintiff uses different spellings for some of the Defendants' names. The Court uses the spelling that appears most likely.

Sergeant Patricio and a CCI Correctional Officer, identified as John Doe.

Plaintiff's first claim stated as follows:

On 1-29-23,[2] while I was housed at CCI Tehachapi, I was assaulted by 3 inmates. The assault was a result of both negligence and deliberate indifference on the part of Tehachapi custodial staff. Specifically, on my arrival in late December early January, I spoke with Housing Sgt. Patricio in R&R about my housing and safety concerns, telling her that I had enemies on R-g . . . and that I could not be safely housed there. I went on to give her the names of the inmates, one of which made personal threats against me, who was one of the inmates who assaulted me, causing several severe injuries, including broken [illegible], head and neck injuries [illegible] to my ribs and damage to my eyesight.

Sgt. Patricio's negligence and deliberate indifference in ignoring my safety concerns led to my assault and the injuries I suffered.

(ECF No. 1, p. 3).

Plaintiff's second claim states as follows:

On 1-29-24, I was the victim of [an] assault by several inmates when FB Building Officer John Doe opened my cell door. This assault occurred after I repeatedly told several staff members that I was threatened and harassed by inmates on R-g and were also housed in the same building as I. I was on loss of privileges and was no[t] scheduled for any ducat at any time. The tower officer opening my door for the inmates to assault showed both negligence and deliberate indifference causing my injuries.

Officer John Doe opening my door when it was not supposed to be opened led to me being assaulted by the inmates causing my injuries.

(*Id.* at 4).

The Court issued its screening order on December 23, 2025. (ECF No. 7). After explaining the relevant Eighth Amendment standards and considering Plaintiff's allegations, the Court concluded that he could proceed on his claim for failure to protect against Defendant Patricio. (*Id.* at 6). However, Plaintiff failed to state a claim against the John Doe Defendant because "Plaintiff does not indicate that John Doe actually knew of Plaintiff's safety concerns" or that the John Doe Defendant "acted with deliberate indifference in opening the door." (*Id.*).

The Court granted Plaintiff leave to file an amended complaint. However, the Court advised him that leave to amend was "not for the purpose of changing the nature of this suit or

---

[2] As discussed below, Plaintiff's second claim in his initial complaint, and his first amended complaint, state that the assault occurred on January 29, 2024.

adding unrelated claims." (*Id.* at 7).

### III.     SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff filed his first amended complaint on February 9, 2026. (ECF No. 10). He now sues sixteen Defendants: (1) Sgt. Patricio, employed at CCI[3]; (2) John Doe, employed as a correctional officer (CO) in Building 3 Tower on B-Yard at CCI; (3) Allan, a case manager employed at Kern Valley State Prison (KVSP); (4) Lt. Rodriguez, employed at KVSP; (5) Warden Christian Pfeiffer, employed at KVSP; (6) Brian Hancock, employed at the Case Records and Litigation Coordination Office at KVSP; (7) John Doe, a grievance coordinator employed at KVSP; (8) J. Mockly, employed at the Office of Appeals at Sacramento, California; (9) T. Valdez, employed at the Office of Grievances at CCI; (10) John Doe, a watch commander at CCI; (11) John Doe, a captain employed at CCI; (12) John Doe, sergeant #1 employed at CCI; (13) John Doe, sergeant #2 employed at CCI; (14) John Doe, the Warden employed at CCI; (15) Lt. E. Amos, an RVR Hearing Officer employed at CCI; and (16) AW C. Livingston, employed at CCI.[4]

Unlike his first complaint, Plaintiff's amended complaint concerns events at multiple prisons spanning from October 2022 until January 2024.

#### A.     KVSP Allegations

Plaintiff's amended complaint alleges that on October 11, 2022, while housed at KVSP, Plaintiff told unidentified COs that he had to leave the yard due to safety concerns. Plaintiff had been told that he was going to be stabbed by "SNY" prison gang members. (*Id.* at 4). However, "the CO[5] refused to do anything about it." (*Id.*).

This same day, Plaintiff's wife called Defendant Pfeiffer and explained the threats, but

---

[3] Plaintiff wrote "works at *ICC* at Tehachapi" for this Defendant and the John Doe Defendant listed next. (ECF No. 10, p. 1). The Court understands Plaintiff to be alleging that these Defendants work at "*CCI*."

[4] The Court will direct the Clerk of Court to revise the docket to add the fourteen additional Defendants sued in the first amended complaint as well as add a descriptor for the "John Doe" Defendant already listed on the docket.

[5] Plaintiff indicates that he told COs plural about his safety needs but then says "the CO" singular refused to help him.

he told her there was nothing he could do.

Plaintiff attempted to get another unidentified CO to protect him, and when this CO refused, Plaintiff pulled out two inmate manufactured weapons, leading the CO to place Plaintiff in restraints and send him to Ad-seg. Plaintiff was found guilty of weapons charges, but explained to the hearing officer that it was the only way he could get off the yard to protect himself. After Plaintiff completed his time in Ad-seg, he was taken to classification, where he explained to Defendants Allen and Lt. Rodriguez that if they sent him back to C-Yard he would be attacked and they would be held responsible. However, on March 30, 2023, Plaintiff was released from Ad-seg back to C-Yard.

On April 4, 2023, Plaintiff told an unidentified CO that he was not going to go out to Yard because he had found out there was "a price on his head." (*Id.* at 5). The CO told him Yard was mandatory. Plaintiff went out to yard but two inmates attacked him from behind with a weapon, knocking him out, and brutally assaulting him. After regaining consciousness, and covered in blood, he was rushed to the hospital for a CT scan.

On April 21, 2023, the County of San Diego Public Defender wrote a letter to Defendants Pfeiffer and Hancock, which requested the letter to be placed in Plaintiff's Central File, and asked that Plaintiff be transferred to Richard J. Donovan Correctional Facility, Centinela State Prison, or any institution except CCI or Salinas Valley State Prison (SVSP) based on Plaintiff having enemies at the latter two prisons and thus not being safe if housed there. Although the letter requested a written response, and the attorney later called KVSP to talk to both Defendants, they refused to talk to the attorney and never responded to the letter.

Plaintiff was transferred to SVSP after unidentified staff were aware that he had enemies there. Plaintiff told unidentified Defendants that he had enemies at SVSP and CCI. Plaintiff's attorney also told unidentified Defendant that Plaintiff had enemies at SVSP and CCI. Plaintiff was only at SVSP for about three months before he was transferred to CCI.

**B.    CCI Allegations**

When Plaintiff was located "in R&R at CCI," he told Defendant Patricio "that he had enemies on the yard and Defendant didn't care." (*Id.* at 7). Plaintiff was initially on A Yard, but

moved to Ad-seg on B Yard, and then to B Yard 3 Block.

On September 8, 2023, Plaintiff refused to accept a housing assignment and was given an RVR. Plaintiff states that unidentified COs tried to force him to take a cellmate and he refused, explaining that he did not feel safe "with another inmate because . . . the I.R. Prison gang had attacked him in KVSP and had already been threatened by them at CCI." (*Id.* at 8). Defendant Amos found Plaintiff guilty of the RVR and lied by stating that Plaintiff had no enemy concerns in the final copy of the RVR. Defendant Livingston signed this falsified document making Livingston complicit in the violation of Plaintiff's constitutional rights.

Plaintiff moved from 3 Block to 5 Block, went out to court, and was placed back into 3 Block upon his return.

Plaintiff told Defendant John Doe Tower Officer that he had safety concerns in Building 3 and not to open his door for anyone.

On January 4, 2024, when Plaintiff was found guilty of refusing to house, he lost 30 days of Yard recreation privileges. When this occurs, the Tower Officer "puts a 'cap' on the door to make sure that door is never open[ed]." (*Id.* at 9). The same officers work five days a week in the Tower and know which doors are not allowed to be opened. And the "cap" lets any non-regular CO know not to open the door.

On January 29, 2024, Plaintiff stood at his cell door and watched as Yard was being released. He watched as three "I.R. Gang" members waked into his section, two of which did not live in the building and had no right to be there. (*Id.*). The third inmate was a known enemy of Plaintiff and had told Plaintiff he was going to stab him. This inmate should never have been in Plaintiff's section.

The three inmates walked up to Plaintiff's cell and ordered Defendant John Doe Tower Officer to open his cell door. Defendant John Doe Tower Officer opened the door despite knowing the door was "capped" and that the three inmates did not live in the cell and that they were Plaintiff's enemies.

Defendant (presumably meaning the John Doe Tower Officer) "then watched as all [three] gang members ran into the cell and watched doing nothing to stop the brutal assault

6

[that followed.]" (*Id.* at 10). When Plaintiff fell to the ground, all three gang members assaulted him by kicking him in the face, back, stomach, and stomping on his head. Among other injuries, Plaintiff suffered broken teeth, bruised ribs, and vision problems.

"Before the 1-29-24 assault, Plaintiff's wife had called the CCI Watch Commander, CCI Captain, CCI Warden and 2 different CCI Sgts. All 5 Defendants John Does said they would do nothing." (*Id.* at 11).

Plaintiff asks for $2 million in monetary damages.

## IV.    ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A.    Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007)

(quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B.      Failure to Protect

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . . " *Farmer*, 511 U.S. at 832 (citation and quotation marks omitted). Among other things, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Id.* (citation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834 (citation and quotation marks omitted). To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Id.* at 837.

"'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer,* 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"

8

*Labatad*, 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847). "[I]n order to satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013).

Plaintiff's amended complaint alleges that, following his transfer from SVSP to CCI, he "was in R&R in CCI" and "told Defendant Sgt. Patricio that he had enemies on the Yard" but Patricio "didn't care." (ECF No. 10, p. 7). It also alleges that Plaintiff told Defendant John Doe Tower Officer "he had safety concerns in Building 3 and not to open his door for anyone." (*Id.* at 9). However, Defendant John Doe Tower Officer opened his cell door for three inmates who violently assaulted and severely injured him. This was despite Plaintiff's door being "capped," *i.e.*, a notice to not open the door, and the inmates not living in that cell. Further, Plaintiff alleges that Defendant John Doe Tower Officer "watched doing nothing to stop the brutal assault." (*Id.* at 10).

Liberally construing these factual allegations for the purposes of screening, the Court concludes that Plaintiff has sufficiently stated a claim for failure to protect against Defendants Patricio and John Doe Tower Officer.

However, Plaintiff fails to state a claim against any other Defendant at CCI. Notably, Plaintiff does not indicate that any other Defendant knew of Plaintiff's safety concerns and took actions, or failed to take actions, that led to his assault. While Plaintiff states that unidentified "COs tried to force him to take a cellmate" and he "explained that he did not feel safe in a cell with another inmate" based on his being attacked at KVSP and being threatened at CCI, he does not identify any specific concerns with any proposed cell mate. Moreover, Plaintiff does not allege that this decision led to his assault. Similarly, Plaintiff asserts that, "[b]efore the 1-29-24 assault, Plaintiff's wife had called the CCI Watch Commander, CCI Captain, CCI Warden and 2 different CCI Sgts. All 5 Defendants John Does said they would do nothing." (*Id.* at 11). However, Plaintiff does not describe what his wife said in the calls to these persons, what role they would have had in preventing his later attack, or how their actions or inaction

led to the assault that took place at CCI.

####    C.    False RVR Statement

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

"False statements, alone, do not violate a prisoner's constitutional rights," *Alverto v. Henderling*, No. C18-1380 BJR-BAT, 2018 WL 7018718, at *1 (W.D. Wash. Oct. 2, 2018), *report and recommendation adopted*, No. 18-CV-1380-BJR-BAT, 2019 WL 174674 (W.D. Wash. Jan. 11, 2019), nor is the filing of a false rules violation report by a prison official against a prisoner a *per se* violation of the prisoner's constitutional rights, *Muhammad v. Rubia*, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), *aff'd*, 453 F. App'x 751 (9th Cir. 2011). This is because "a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983." *Muhammad*, 2010 WL 1260425, at *3 (internal citations omitted.); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal. June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

Here, Plaintiff states that, after finding him guilty of the RVR for refusing to take a cellmate, Defendant Amos "lied stating Plaintiff had 'no' enemy concerns on the final copy of the RVR." (ECF No. 10, p. 8). And Defendant Livingston "signed this falsified document being complicit in violating" his constitutional rights." (*Id.*).

Although Plaintiff states that he was found guilty of an RVR for not taking a cellmate,

he does not allege that he was denied procedural due process in any disciplinary hearing.

For these reasons, Plaintiff fails to state any due process claim.

### D.    Unrelated Claims and Defendants

Plaintiff's amended complaint also includes allegations against other Defendants related to events that occurred at KVSP before his transfer to CCI. The Court recommends dismissing these claims without prejudice to bringing them in a separate case.

Under the Federal Rules of Civil Procedure, Plaintiff may not proceed on unrelated claims against different defendants in a single action. Plaintiff may sue one defendant for multiple claims. Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."). And Plaintiff may sue multiple defendants in one action "arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The 'same transaction' requirement refers to similarity in the factual background of a claim." *Williams v. Allison*, No. 1:19-CV-00371-BAM (PC), 2021 WL 3502359, at *5 (E.D. Cal. July 21, 2021), *clarified on denial of reconsideration*, 2021 WL 3488283 (E.D. Cal. Aug. 9, 2021). However, Plaintiff may not assert unrelated claims against different defendants in one lawsuit. As one court explained:

> Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections,* 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 F. App'x 791 (9th Cir. 2015) (internal quotations and citations omitted); *Moore v. California Corr. Inst.*, No. 1:23-CV-00892-BAM (PC), 2025 WL 3648141, at *3 (E.D. Cal. Dec. 16, 2025), *report and recommendation adopted*, 2026 WL 175276 (E.D. Cal. Jan. 22, 2026) (concluding that a

plaintiff could not "bring multiple claims that arose from different and unrelated occurrences and different institutions").

Here, Plaintiff's allegations relating to KVSP involve different Defendants than his allegations relating to CCI. Although they all generally concern Plaintiff's concerns for his safety, they relate to different events at a different prison. They thus do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Under the authority set forth above, Plaintiff's claims against KVSP prison employees based on their actions or inactions at KVSP cannot proceed in the same lawsuit as his claims concerning the events at CCI.[6]

## V.    CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's first amended complaint and concludes that it states only claims that Defendants Patricio and John Doe Tower Officer failed to protect him from being assaulted by his fellow inmates in violation of the Eighth Amendment. The Court will recommend that all other claims and Defendants be dismissed without further leave to amend. Notably, the initial screening order addressed similar allegations, advised Plaintiff how they were deficient, provided applicable legal standards, and granted him leave to amend. Further, contrary to the screening order's direction, Plaintiff added unrelated claims and Defendants concerning events occurring at KVSP.

Accordingly, IT IS ORDERED as follows:

1.  The Clerk of Court shall assign a District Judge to this case.

2.  The Clerk of Court shall revise the "John Doe" Defendant on the docket to "John Doe Tower Officer."

3.  Additionally, the Clerk of Court shall add the following Defendants on the docket: (1)

---

[6] Further, the Court finds no prejudice to Plaintiff in dismissing the unrelated KVSP claims without prejudice because Plaintiff only first raised these allegations on February 9, 2026, and the Court is promptly informing Plaintiff that these claims cannot be joined with his pending claims in this case. (ECF No. 7, p. 7); *see Rush v. Sport Chalet, Inc.,* 779 F.3d 973, 975 (9th Cir. 2015) ("[D]istrict courts who dismiss rather than sever must conduct a prejudice analysis, including 'loss of otherwise timely claims if new suits are blocked by statutes of limitations.'").

Allan, a case manager employed at Kern Valley State Prison (KVSP); (2) Lt. Rodriguez, employed at KVSP; (3) Warden Christian Pfeiffer, employed at KVSP; (4) Brian Hancock, employed at the Case Records and Litigation Coordination Office at KVSP; (5) John Doe, a grievance coordinator employed at KVSP; (6) J. Mockly, employed at the Office of Appeals at Sacramento, California; (7) T. Valdez, employed at the Office of Grievances at CCI; (8) John Doe, a watch commander at CCI; (9) John Doe, a captain employed at CCI; (10) John Doe, sergeant #1 employed at CCI; (11) John Doe, sergeant #2 employed at CCI; (12) John Doe, the Warden employed at CCI; (13) Lt. E. Amos, an RVR Hearing Officer employed at CCI; and (14) AW C. Livingston, employed at CCI.

Further, IT IS RECOMMENDED as follows:

1. This case proceed on Plaintiff's claims that Defendants Patricio and John Doe Tower Officer failed to protect him from being assaulted by his fellow inmates in violation of the Eighth Amendment.

2. All other claims and Defendants be dismissed without prejudice and without further leave to amend.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **February 26, 2026**                    /s/ *Erica P. Grosjean*
                                                    UNITED STATES MAGISTRATE JUDGE

13